**BY ECF & FEDERAL EXPRESS**

Hon. Colleen McMahon                                                      October 30, 2018
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

       Re: *United States v. Sire Gaye*
          18 CR 153 (CM)

Dear Judge McMahon:

  This letter is respectfully submitted in connection with the sentencing of my client, Sire Gaye, scheduled on November 13, 2018 at 4:00pm, and in support of his request for a sentence of time already served followed by an appropriate period of post-release supervision.  Such a sentence is certainly warranted in this case due to Mr. Gaye's acceptance of responsibility, the relatively low guideline range, and this young man's ability to overcome his felony record and turn his life around.

**Preliminary Statement**

  This memorandum is intended to assist the Court in arriving at a just sentence that is "sufficient, but not greater than necessary" to comport with the sentencing considerations set forth in 18 U.S.C. § 3553(a). The "overarching statutory mandate" placed upon the Court is to impose the minimum sentence sufficient to achieve the purposes of sentencing.  *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007).

  Sire Gaye is an intelligent young man.  His mother and father raised him to understand the value of hard work and family.  As a young boy, Sire spent his grade school years in Senegal with his extended family.  He was exposed to a very different culture than the one that greeted him when he returned to Brooklyn, New York to begin high school.  Although he had to repeat 9th grade to improve his English, Sire achieved good grades up until his junior year.  Already years older than his

classmates, the teenager began to explore the world outside of his home and family. Unfortunately, too many figures in his neighborhood valued power and cared not for the rule of law.  Above all, he saw that there was one thing that seemingly determined a person's social worth – money (or rather the appearance of money).

As Sire drifted from both school and his tight-knit family, he began smoking marijuana and running with the wrong crowd.  He did not have the desire or personality for the drug and gun circus that has ensnared so many young people in our city.  He has always been good with numbers and he found his illegal path to the almighty dollar through financial scams.  To this young man, he never pondered the consequences, to his family, the victims, or even to himself.  He thought he had found an easy path that would bring money without honest work, and for a while, it did.

That all changed when at 23 years of age, Sire Gaye finally suffered real consequences for his actions.  As he sat in a jail cell in February of 2018, he quickly realized that the "easy path" that he thought he had discovered was paved with fool's gold.  Over the course of this case, Mr. Gaye has been forced to reconcile that his decisions have consequences not only to him and others.  This young man has dug himself an unfortunate hole with this case and his other state court cases.  However, he has learned the invaluable lesson that in life that there is no easy path. Fortunately, Sire has a strong and supportive family that can help him get through these troubles, and can provide him with the support that he will need to put his life back together and use his intelligence to become a productive member of society.

## **Mr. Gaye's   Background**

Sire Malick Gaye is the oldest of four children to mother Aissata Gaye and father Moussa Gaye, both of whom immigrated from Senegal.  His mother owns and operates an African hair braiding salon in Crown Heights.  His father recently

quit his factory job to focus entirely on his career as a TLC driver. Sire's oldest sister, Awa, works in a restaurant while their younger siblings, Abeou and Amina are both in school.

Sire grew up in a very stable home, with two loving parents. They would often travel to Senegal to visit family and when young Sire was set to begin grade school, the family decided that he would spend the school year in Senegal. He attended a Muslim academy, where he spoke French instead of English (he is bilingual) and wore a school uniform every day. Sire would spend the summers in Brooklyn with his family but return each fall to Senegal. It was not until years later that he truly came to appreciate this experience. Although the school was strict, Sire remembers being happy there, living a very normal childhood surrounded by friends.

When Sire finished his schooling in Senegal, he returned to Brooklyn to begin high school. This was a shock to his system. Prospect High School was very different from his prior academy. The school was patrolled by police officers, school uniforms gave way to the fashion currency of high school culture and the students had a much harder edge than he had previously experienced.

Sire's difficult entry into this new world was only compounded when he was forced to repeat the 9th grade because he was struggling with his English. He was also 15 when he began high school, so he was older than most of his classmates. Even with these impediments, he was able to maintain very good grades through his sophomore year. The one thing he was not able to do was find a circle of friends.

Sire's downfall began in his last two years of high school. As with any high school junior or senior, he found community on social media. As he began to make connections and friends through social media, this pursuit interfered with his studies and his grades began slipping. Sire had always been cognizant of the crime

and drugs that were prevalent in his neighborhood. He had a sense that some of his classmates were being pulled into the life of gangs, drugs and violence. He had no desire to get involved with that world, but as he got older, he could not help but notice that his classmates and the people in his neighborhood who had crossed that line into street crime always seemed to have money, and with that money came what he interpreted as respect.

He saw the flaunting of money on social media and wished he could enjoy some of the same perceived glamour. And while Sire knew that he wanted no part of a gang or a street corner, he noticed that there were other people online and in his neighborhood who had figured out a way to make a lot of money without drugs and guns. Sire reached out and was welcomed into the world of financial scamming. This illegal trade combined Sire's raw intelligence with his childish stupidity. He was really good at learning the systems involved in these various scams, but too immature to acknowledge the damage he was doing or the fact that his illegal conduct would eventually catch up with him.

Sire somehow kept his family completely in the dark about his new lifestyle. To maintain this lie, he had to withdraw almost entirely from his working-class parents. In his young mind, he had discovered a way to beat the game. He and his supposed friends were flush with cash and now he was getting the recognition that he had previously envied.

His criminal lifestyle continued through 2017, despite three arrests for fraud, one in Brooklyn, one and New Jersey and one in Queens. Because he had no criminal record, Sire was released on his own recognizance on his Brooklyn case and disposed of that matter with a Disorderly Conduct and community service. He was arrested and told to come back to court in New Jersey, something he failed to do until recently (that case is still pending). He was also released on his own

recognizance in Queens and that case is also still pending.[1]  Sadly, these brushes with the law did not alter Mr. Gaye's cost-benefit analysis, and he continued committing crimes until he was finally forced to reckon with the consequences of his actions.

That reckoning came on February 11, 2018, when he was arrested following an attempt to use a fraudulent credit card at an area hotel.  Unlike his arrests in 2017, though, Mr. Gaye would not be released from custody.  He not only had a new Manhattan state case, but he also learned that he was being prosecuted in federal court as well.  Mr. Gaye had no choice but to contemplate his actions as he sat in Manhattan Detention Center until March 8, 2018, when he was transferred to federal custody.  This young man who had never seen the inside of a jail facility now found himself detained at the Metropolitan Detention Complex until this Court agreed to release him to home confinement and electronic monitoring on May 18, 2018.  He remained on home confinement until this Court altered his bail conditions to a 10pm – 7am curfew with phone check-in on September 6, 2018.

The lesson of consequences, although it did not arrive until 2018, is a lesson that has fully landed upon Sire Gaye.  This 24 year old has done a great deal of damage, to his victims, his family and himself.  His parents, who were in my office very early on in this case to find out what was going to happen to their son, have been supportive throughout.  There is no doubt in my mind that Moussa and Aissata Gaye will do everything in their power to assist their son as he attempts to close this dark chapter and put this behind him.

Sire Gaye used to think that his actions were consequence free.  When I met with him recently, I asked him if he was a nervous wreck, wondering if and when he would get caught.  His response was simple.  "No."  He explained that this was

---

[1] Mr. Gaye is scheduled to appear for sentencing on that matter on November 14, 2018, where he will be sentenced to 90 days incarceration following his felony plea on July 23, 2018.

the problem. He never truly thought about the consequences of his actions and he somehow assumed that he would never get caught. Having had his liberty taken away, first through incarceration and then through home detention, he had no choice but to reevaluate the life he wants to build. He understands that once he makes it out the other side of this mess he has created, he will have to work harder than he has ever worked to repair the damage and rebuild his life. Although he will be attached to the weight of his criminal record, he has the support of his hard-working family. And more importantly, he now understands that in life, there is no easy path.

## The Crime

Mr. Gaye was a willing participant in this criminal conspiracy. As with any conspiracy, there was a hierarchy. Mr. Gaye was not a leader of the conspiracy and his involvement is appropriately reflected in the guideline range of 4 to 10 months.

## Sentencing

It is well established that following *United States v. Booker*, 543 U.S. 220 (2005), and its progeny such as *Spears v. United States*, 555 U.S. 261 (2009), *Kimbrough v. United States*, 552 U.S. 85 (2007) and *Gall v. United States*, 552 U.S. 38 (2007), this Court is granted broad discretion to impose a sentence below the recommended guideline range when appropriate under the factors enumerated in § 3553(a). Beyond the individual factors, the so-called "parsimony clause" of § 3553(a) requires this Court to impose a sentence which is "sufficient, but not greater than necessary" to satisfy the factors set forth in § 3553(a). The guidelines are but one factor to consider in making an "individualized assessment" of the appropriate sentence based upon all of the § 3553(a) factors. *Booker*, *supra*, 543 U.S. @ 234, *Gall*, *supra*, 552 U.S. @ 50.

## The Sentencing Guidelines

The Probation Department calculates the advisory sentencing guidelines as having a Total Offense level of 6. (PSR ¶ 4(g)).

The Probation Department further calculates Mr. Gaye's total criminal history point calculation of 0 reaching a Criminal History Category of I. (PSR ¶ 4(f)). The guideline range at this applicable Total Offense Level and Criminal History Category is 4 - 10 months. (PSR ¶ 4(g)). The Court has full discretion to sentence Mr. Gaye in accordance with the explicit goals set forth in the *Kimbrough* "mandate" to impose the minimum sentence sufficient to serve the purposes of sentencing. *Kimbrough*, *supra*, 552 U.S. @ 101.

## The Factors of 18 U.S.C. § 3553(a)

This Court is fully familiar with the factors set forth in § 3553(a). After careful consideration of each of the following pertinent factors, we respectfully urge this Court to arrive at a sentence of time served, which would be "sufficient, but not greater than necessary," to meet the goals of sentencing. 18 U.S.C. § 3553(a).

   1. *The Nature and Circumstances of the Offense*

While the sterile and distant nature of financial transactions can make passing fraudulent checks seem like a "victimless crime," we do not make that argument. While the victims in this case experienced no violence, their lives, both business and personal, were undoubtedly disrupted.

From the perspective of this young defendant, it was all too easy to ignore the consequences of his actions and how they impacted these victims. Mr. Gaye's choice to commit these crimes was his own and he accepts responsibility for those decisions. However, on the spectrum of fraud and financial crimes, Mr. Gaye's criminal conduct certainly falls at the smaller end.

   2. *The Characteristics of the Defendant*

Under § 3553(a)(1), the Court must consider the "history and characteristics of the defendant." It is always troubling when someone so young falls prey to greed and makes decisions that will adversely impact the rest of their life. Mr. Gaye has made those mistakes. He will shortly find himself in his mid-20's with multiple felony convictions on his permanent record. He will have no choice but to rise to the occasion and put his life on the right track.

Many of the details of Mr. Gaye's life have already been discussed. As a young boy and teen, he showed great promise and intelligence. The boy who had to repeat the 9th grade because of his English now speaks the language perfectly. While his obstacles moving forward are substantial, he has family both here and in Senegal that can continue to show him that honest work is the right way to live.

This young man did what so many young men do. He made terrible decisions without considering the consequences. His incarceration and home confinement have taught him that the consequences of crime are not worth any short term benefits. Mr. Gaye understands that he will return to jail on his Queens state case, but once his sentence is complete, he wants to do everything in his power to ensure that he never sees the inside of a correctional facility again.

Mr. Gaye has his entire life ahead of him. He has already been punished and has learned the valuable lessons that sentencing intends to teach. The hubris of youth led him to this point, but the fact that he has so much life left to live will provide him all the motivation he needs to become a productive member of society.

## A Reasonable Sentence

In a post Booker environment, where the sentencing guidelines are no longer mandatory, the decision on what sentence to impose is often the most difficult question to answer. Booker requires the district court to tailor sentences to reflect an application of the 18 U.S.C. § 3553(a) factors, with the expectation that post-

Booker sentences will achieve more "individualized justice."  See, *United States v. Crosby*, 397 F.3d 103, 114 (2d Cir. 2005).

Should the Court grant Mr. Gaye a sentence of time served, he understands that his freedom will be short-lived.  He will appear the following day at Queens Criminal Court to be sentenced to 90 days incarceration.  He also has pending cases in Manhattan Criminal Court and Essex County, New Jersey.  Along with the monitoring that will follow his sentence on this case, it is likely that he will also be monitored by at least one other department of probation.  Should Mr. Gaye continue along the rehabilitated path that he has traveled since his release from custody in May of this year, and should he abide by all the requirements of the various monitoring agencies, then he will begin the difficult but necessary task of rebuilding his life.

Should he falter, his penalty will be imprisonment.  We ask this Court to grant him the opportunity to prove that he has changed and that he can continue to change his life.  A sentence of time served would be reasonable and would recognize the rehabilitation that has already occurred in Mr. Gaye's life and would allow that rehabilitation to continue.

## Conclusion

Considering all the foregoing, it is respectfully requested that the Court consider a sentence of time served and an appropriate period of post-release supervision.

Dated:     New York, New York
           October 30, 2018

                                          Respectfully submitted,

                                          /s/ Ken Womble

cc:    Mollie Bracewell, AUSA (via email)